IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ROBIN RODRIGUEZ, § | |
| § | |
| v.  § | NO.  A-05-CA-944 AWA |
| § | |
| JO ANNE B. BARNHART, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: Plaintiff's Brief (Clerk's Doc. No. 10); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 12); and the Social Security Record filed in this case (Cited as "Tr.").

### I.  PROCEDURAL HISTORY

Plaintiff Robin Rodriguez ("Plaintiff") protectively applied for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") on July 22, 2003, alleging inability to work due to chronic pain in her neck and lower back, fibromyalgia, depression, and anxiety.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 13, 2005.  The ALJ denied Plaintiff benefits in a decision issued May 11, 2005.  Plaintiff appealed this decision to the Appeals Council and submitted additional evidence for review.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 15, 2005. On November 10, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

## II.  ISSUES PRESENTED

Plaintiff contends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence and is not based upon the proper legal standards.  Specifically, Plaintiff raises the following issues: 1) the evidence does not support the residual functional capacity the ALJ used; and 2) the ALJ failed to properly evaluate Plaintiff's credibility.

## III.  STATEMENT OF THE CASE

Plaintiff contends that she has been unable to engage in substantial work activity since April 4, 2003, due to chronic pain in her neck and lower back, fibromyalgia, depression, and anxiety. Plaintiff was represented at the hearing by an attorney.  A vocational expert testified at the hearing.

**A.**    **Plaintiff's Testimony**

Plaintiff testified that she was born on November 5, 1975, and was 29 years old at the time of the hearing.  Tr. 66.  Plaintiff stated she has never been married and has two minor children.  Tr. 67.  She and her children live with her mother and receive food stamps and Medicaid.  Tr. 66.  As for her educational background, Plaintiff graduated from high school.  *Id.*

From 2001 until July of 2003, Plaintiff worked for Adult Care of Austin as a full-time receptionist.  Tr. 67.  She states that her work got busier at the end so it was overwhelming and harder for her to work without pain.  Tr. 74.  From 1995 until 2001, Plaintiff worked as a full-time chiropractic assistant and cleaned the office.  Tr. 67.  Plaintiff worked as a cashier and at the return desk at Home Depot from 1994 until 1996.  *Id.*  Before that Plaintiff worked part-time as a cashier at a grocery store after school.  Tr. 68.

Plaintiff stated that she is unable to work mainly because of the pain, but also because of depression and anxiety. *Id.* She complains of headaches and pain in her neck, shoulders, mid and lower back, arms, wrists, and hands. *Id.* Plaintiff testified her depression causes her to cry and want to be alone, which has made it so she does not have any friends. Tr. 68-69. She also stated that she has had panic attacks for three years when she has to do something new or worries about her pain. Tr. 69, 75. Plaintiff takes medication for pain and insomnia. Tr. 71-72. As a result of her insomnia, she only sleeps for three hours a night and naps for three hours in the morning and one hour in the afternoon. Tr. 72.

Plaintiff testified that she takes care of the 2 year-old during the day, and takes care of her 5 year-old from when he comes home from school until her mother and brother get home and help out. Tr. 69. She stated that she does not do any yard work, cooking, laundry, grocery shopping, or driving. Tr. 70. Plaintiff explained that she cannot drive because it is hard looking back to change lanes, and she gets dizzy while driving. Tr. 76. Plaintiff estimated that she could only sit or stand for 10 or 15 minutes and can only walk for about a quarter of a mile. Tr. 70-71. She stated that she could lift about 15 pounds. Tr. 71. Plaintiff is able to bathe every other day with a removable shower head and can dress but has difficulty pulling stuff over her head and trying to reach her back. Tr. 72-73.

**B.     Medical Records**

The following is a summary of Plaintiff's medical records which are relevant to the issues presented in the instant case. The relevant time period is April 4, 2003, the alleged onset of Plaintiff's disability, through the date of the Appeals Council's decision, September 15, 2005. Plaintiff must demonstrate that she was under a disability on or before September 15, 2005, in order

to receive benefits. *See Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ("Claimants bear the burden of establishing a disabling condition before the expiration of their insured status").

Dr. Joshi found Plaintiff had pain upon examination of her spine and a limited range of motion. Tr. 246. Dr. Joshi put Plaintiff on methadone for her pain, but Plaintiff reported in July of 2003 that it was not helping. Tr. 243. Dr. Novin, a surgeon who examined her medical records determined on September 12, 2003, that Plaintiff lacked credibility and did not have a severe injury to her muscular or skeletal system. Tr. 201.

A psychiatric evaluation was performed by Dr. Benbow on October 2, 2003, and it was noted Plaintiff was well groomed and showed no signs of involuntary movements, chronic invalidism, or trouble walking. Tr. 202. Plaintiff told Dr. Benbow that she decided to not work after she found out the babysitter's husband was tickling her son. *Id.* Dr. Benbow found her thoughts and responses normal, along with her hearing and sight; he also felt that her mood was appropriate and stable. Tr. 204. Dr. Benbow found Plaintiff to have average intellect and education, and noted that her depression was in the mild to moderate range. *Id.* Dr. Benbow stated that although Plaintiff had generalized anxiety disorder, her mental prognosis appeared fairly good and he gave her a GAF of 65-70.[1]

---

[1]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." *See Boyd v. Apfel*, 239 F.3d 698, 699 n.2 (5th Cir. 2001) (quoting AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994)). A GAF of 61-70 is indicative of "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful relationships." *See* AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 1994).

On October 20, 2003, Dr. Cohen completed a psychiatric residual function form and noted that Plaintiff's medical impairments were not severe. Tr. 185. Dr. Cohen found Plaintiff had major depression and general anxiety. Tr. 188, 190. He determined she had mild restrictions in daily living activities, maintaining social functioning, and maintaining, concentration, persistence, or pace and no episodes of decompensation. Tr. 195. Dr. Cohen found that Plaintiff's mental limitations were primarily a result of her frustration and depression with her physical problems, however, he determined that she could finish tasks on time and make decisions. Tr. 199.

Plaintiff reported to Dr. McCarty of the Austin Pain Associates that she had seen numerous doctors for her shoulder pain, but the injections given to her did not provide relief, and, as a result, her pain was a 9 out of 10 and she was only able to sleep 3 to 4 hours a night. Tr. 212. Dr. McCarty found a disc bulge and felt she might have fibromyalgia. Tr. 211-13. Dr. McCarty's treatment plan was to give her injections and sleep aids so that she could have physical therapy, which he hoped would allow her to return to work. *Id.*

On March 2, 2004, Dr. Casner assessed Plaintiff's case and determined that Plaintiff's fibromyalgia and cervical disc bulges were not severe. Tr. 200. On March 11, 2004, Plaintiff's examination revealed she was not in acute distress, but had tenderness along her upper spine and shoulders and with some arm movement. Tr. 465. On May 12, 2004, Plaintiff reported her pain ranged from 5 to 10 out of 10 and the injections provided good, but temporary relief. Tr. 463. It was reported her depression was resolved with medication. Tr. 464. Plaintiff reported improved symptoms on July 27, 2004, but stated her average pain was 7 out of 10. Tr. 461. It was recommended that she get back into yoga and swimming. Tr. 462.

Dr. McCarty performed a procedure on September 14, 2004, which he determined confirmed her facet joints were causing her pain. Tr. 469-70. On October 21, 2004, Plaintiff underwent a procedure intended to provide her with prolonged pain relief. Tr. 467. On November 11, 2004, after breaking a rib and having to stop yoga and walking, Plaintiff reported her neck was feeling very good, but her back was hurting. Tr. 459. It was noted that some of the pain was probably from returning to yoga and walking after having stopped. Tr. 460. On January 26, 2005, Plaintiff went to the Seton Community Clinic and stated her comfort and function levels were fair, her pain and function was better, and the only treatment she was receiving was exercise, heat, ice, and medications. Tr. 457. Plaintiff stated her average pain was a 6 out of 10, and she felt her success with her functional goals was a 5 out of 10.[2] Tr. 458. Plaintiff went to the emergency room twice in March of 2005 complaining about her pain. Tr. 487-91.

**C.      Vocational Expert's Testimony**

The V.E. testified that Plaintiff's past relevant work as a receptionist was sedentary and semi-skilled. Tr. 77. Plaintiff's work as a chiropractic assistant is considered medium and skilled. *Id.* Plaintiff's jobs as a cashier, checker, and retail sales clerk are considered light and semi-skilled. *Id.*

The hypothetical question posed by the ALJ to the V.E., asked the V.E. to consider a hypothetical individual who was Plaintiff's age and had Plaintiff's education and work history. *Id.* It further assumed that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently and could stand, sit, and walk 6 hours out of an eight hour work day. *Id.* The ALJ included that due to pain, medication for pain, depression, and anxiety, the person would be limited to understanding,

---

[2]Plaintiff filled out this same form in March of 2003 and reported her pain ranged from 5 to 10 out of 10 and that she was not able to cope with her pain or participate in normal activities very well. Tr. 474. She was also receiving more extensive treatment at the time. Tr. 475.

remembering, and carrying out routine step instructions and could respond appropriately to supervisors and coworkers and in jobs that do not require independent decision-making. Tr. 77-78. The ALJ told the V.E. to assume the person had the mental capacity to perform work where interpersonal contact is only incidental to work performance and while working the person might experience moderate levels of symptoms, but the symptoms would not prevent performance as described above. Tr. 78. The V.E. stated that a person with these limitations could not perform Plaintiff's past relevant work. *Id.* However, the V.E. was of the opinion that a person with Plaintiff's limitations (as stated in the hypothetical) could work at a number of light, semi-skilled or unskilled occupations (sewing machine operator, mail clerk, laundry worker), all of which had positions in significant numbers in the national and local economies. *Id.* The V.E. testified that an employer would most likely terminate an employee that missed two or more days a month on a regular basis. Tr. 79.

In response to questioning by the attorney representing Plaintiff, the V.E. stated that if, in fact, the Plaintiff was limited to lifting and carrying 15 pounds occasionally and 10 pounds frequently, and that sitting, standing, and walking could be for a maximum of 2 hours with an opportunity to change positions every 30 minutes, and further could occasionally twist, turn at the neck or waist, reach, bend, stoop, climb a flight or two of steps and could not climb ropes, ladders, scaffolds, or grip or grasp repetitively, then Plaintiff could not maintain competitive, full-time employment. Tr. 80.

## IV.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, the vocational expert's testimony as well as consideration of Plaintiff's alleged disabling impairments, the ALJ

determined that Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ found that Plaintiff had severe impairments of fibromyalgia, anxiety, and depression, but that such impairments did not meet the Listing of Impairments. Tr. 57.

With regard to the impact of Plaintiff's conditions, the ALJ noted that there was conflicting evidence in the record. *Id.* The ALJ noted that Plaintiff had taken narcotics for her pain, and had also received facet injections and pulsed radiofrequency thermocoagulation treatments for her condition. *Id.* On the other hand, he found that Plaintiff was able to care for young children from six to eight hours a day, and also told a consultative examiner she decided to quit working to be home with her children. *Id.* Further, he noted that Plaintiff had stopped swimming, even though it was recommended and had helped with her pain. *Id.* The ALJ found that the inconsistencies between the Plaintiff's subjective complaints and the objective evidence undermined the Plaintiff's credibility. *Id.*

The ALJ also found it significant that much of the medical evidence in the record is from 2001 and associated with her work related injury, an injury from which Plaintiff appeared to have recovered, given that she worked from 2001 to 2003. Tr. 58. With regard to the onset date of 2003 for this claim, the ALJ found the record consistent concerning Plaintiff's chronic pain, but the record did not support a conclusion of disabling pain, based on Plaintiff's reported daily activities. *Id.* The ALJ also found that Plaintiff's depression was considered resolved with medication. *Id.*

Although the state agency doctors stated that Plaintiff's conditions were not severe, the ALJ relied on the more recent records from her treating doctor regarding her physical and mental work-related limitations in functioning. *Id.* Thus, the ALJ found that Plaintiff can lift and carry 20 pounds occasionally and ten pounds frequently and could stand, sit, and walk 6 hours in a workday. Tr. 59.

The ALJ determined that Plaintiff could understand, remember, and carry out routine step instructions and respond appropriately to supervisors and coworkers where she did not have to make independent decisions or have more than incidental personal contact. *Id.* The ALJ stated that while Plaintiff might experience symptoms such as pain, those symptoms would not affect the limited nature of work he found her capable of performing. *Id.* The ALJ found Plaintiff had mild restrictions for daily living and social functioning, and moderate difficulties in concentration, persistence, and pace. *Id.* Based on the V.E.'s testimony and the evidence in the record, the ALJ found Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy.

## V.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to

determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

### VI.  ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999). First, the claimant must not be presently working at any substantial gainful activity.[3] Second, the claimant must have an impairment of combination of impairments that is severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to her past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520.

---

[3] Substantial gainful activity is work activity that is both substantial and gainful. Substantial work activity is work activity that involves doing significant physical or mental activities. Gainful work activity is work activity that an individual performs for pay or profit. 20 C.F.R. 416.972.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant acquits her responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets this burden, the claimant must then prove she in fact cannot perform the alternate work. *Id.*

**A.     Did the ALJ Properly Assess Plaintiff's Residual Functional Capacity?[4]**

Plaintiff argues that the ALJ did not properly consider her limitations and that the jobs she was found to be capable of performing are very similar to her past relevant work (which the ALJ found she could not do). Defendant asserts the ALJ's conclusion was supported by substantial evidence.

The ALJ has a duty to develop the facts fairly and fully, and, if he does not satisfy this duty, his decision is not substantially justified. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ should typically request a medical source statement describing the types of work the plaintiff is capable of performing, although the absence of a medical source statement does not necessarily make the record incomplete. *Id.* Where the record does not clearly show the effect of the plaintiff's impairments on her ability to work, the ALJ's determination regarding the plaintiff's residual functional capacity is not supported by substantial evidence. *Id.* However, reversal is only appropriate in this situation if the plaintiff shows she has been prejudiced by showing that additional evidence would have been produced if the ALJ had fully developed the record and the additional evidence might have led to a different decision. *Id.*

---

[4] Residual functional capacity is the maximum a plaintiff can do despite her limitations. 20 C.F.R. § 404.1545.

Although functional assessments were performed on Plaintiff in conjunction with her work hardening program in 2001, they concluded she could continue to work as a chiropractic assistant, occupations the ALJ and V.E. found Plaintiff could not perform after the 2003 onset of her conditions.  Tr. 391.  Thus, these 2001 functional assessments are no longer applicable. Additionally, the state agency doctors found Plaintiff's impairments were not severe, however, they did not delineate what, if any, limitations she would have in working.  Tr. 185, 200.  The ALJ stated that, because it was more current, the treating doctor's opinion was more persuasive than those of the state agency doctors, and the ALJ based his conclusions regarding Plaintiff's functional capacity on Dr. McCarty's opinions.  Tr. 58.  However, Dr. McCarty offered no direct opinion on Plaintiff's ability to work, how much she can lift, or how long she can sit or stand.[5]  Plaintiff testified that she could not lift more than 15 pounds, could only sit or stand for 15 minutes at a time, and could walk a quarter of a mile.  Tr. 70-71.  As noted, the ALJ did not find Plaintiff's stated limitations to be supported by the medical record, and found them to be inconsistent with Plaintiff's caring for her two year-old during the day and for her five year-old a portion of the day.  Tr. 57.

Importantly, Plaintiff is not claiming that new evidence regarding her residual functional capacity would support her claimed limitations.  Rather, she has merely alleged that the record before the Court includes limitations that the ALJ did not address.  The record before this Court does not support this argument.  The ALJ conducted a thorough analysis of the record and of Plaintiff's claimed limitations.  The record as a whole supports the ALJ's conclusions regarding the Plaintiff's residual functional capacity permitting her to do light work.  Further, the record shows that

---

[5]Dr. McCarty notes after the initial appointment in December of 2003 that injections and physical therapy would allow Plaintiff to resume active therapy. Tr. 481. By the time of the hearing, Plaintiff had received injections and was doing physical activities, both of which helped reduce her pain.

Plaintiff's treating doctor felt that Plaintiffs depression was "resolved with medication," and that Plaintiff's pain and ability to function improved with physical activity like yoga and swimming, and would not preclude her from working.

As for the limitations Plaintiff argues that the ALJ did not address, Plaintiff filed for disability because of her chronic neck and back pain, fibromyalgia, depression, and anxiety, and the ALJ noted Plaintiff had chronic pain and found her fibromyalgia, depression, and anxiety to be severe impairments. Thus, the ALJ directly addressed all of the limitations of which Plaintiff complained. In her brief, Plaintiff asserts the ALJ did not address her limited use of her arms and hands, however, the record only shows some evidence of pain in her hands and nothing stating that she could not use them.

Plaintiff also argues that she is taking a Soma compound and Effexor, which can affect a person's ability to be alert or their coordination. The warning on Soma says to "use caution while driving or performing other tasks requiring alertness, coordination, or physical dexterity," however, the medical records from 2001 state that Plaintiff was taking this medication when she was working. *See* Plaintiff's Brief, Exhibit B. The warning associated with Effexor, states it "may cause you to feel drowsy or less alert and may affect your judgment. Therefore, avoid driving or operating dangerous machinery or participating in any hazardous activity that requires full mental alertness until you know how this drug affects you." *Id.* The record reveals that Plaintiff has been taking Effexor since at least 2003, so she has been on the drug long enough to know how it affects her. Tr. 202. Additionally, Dr. McCarty has instructed Plaintiff to take Effexor only at night, which would

13

not affect her ability to work. Tr. 455. The Court does not believe that the effect of Plaintiff's medications on her ability to work is a valid basis for remand.[6]

Plaintiff also argues that it is difficult to distinguish between her past relevant work experience she was found unable to perform and the jobs the V.E. testified would be available to someone with her limitations. Clearly Plaintiff's job as a chiropractic assistant, which is considered to be medium and skilled, can be distinguished from the jobs the V.E. testified she could perform, which are light and semi-skilled or light and unskilled. Tr. 77-78. One of the limitations that ALJ included in his hypothetical was that the interpersonal contact could only be incidental, which is why being a receptionist, cashier, checker, and retail sale clerk would not be appropriate, but working as a sewing machine operator, mail clerk, or laundry worker could be. Tr. 78. Thus, Plaintiff's argument that the jobs she was found capable of doing were indistinguishable from the jobs the V.E. testified she could perform and that the jobs she was found to be able to perform did not take into account her limitations is inapposite.

For all of these reasons, the Court finds that the ALJ properly determined Plaintiff's residual functional capacity, and there is no basis for a remand on this issue.

**B.      Did the ALJ's Improperly Discount Plaintiff's Credibility?**

Plaintiff alleges the ALJ did not provide specific reasons for discounting Plaintiff's credibility, so the case should be remanded. Defendant asserts that the ALJ did properly consider the evidence in the record and pointed out that a plaintiff's daily activities are an appropriate consideration for determining how credible a plaintiff is.

---

[6] It is notable that Plaintiff's counsel did not include the effect of medications on Plaintiff in the hypothetical she asked the V.E. at the hearing.

Although pain in and of itself can be a disabling condition, it must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988). In order to prove a disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing disabling pain. *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995); 20 C.F.R. § 404.1529 (1997). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *Ripley*, 67 F.3d at 556; 20 C.F.R. § 404.1529. Although the ALJ must consider subjective evidence of pain, it is within his discretion to determine its debilitating nature, and such determinations are entitled to considerable deference. *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Policy Interpretation Ruling Titles II and XVI, SSR 96-7p, 1996 WL 374186, at *2.

When assessing the credibility of an individual's statements, the ALJ is required to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the

individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In accordance with the requirements of the above Social Security rulings and regulations, in determining the credibility of Plaintiff's subjective complaints of pain, the ALJ considered the entire case record, including the objective medical evidence, the individual's own statements about her symptoms, the factors listed in 20 C.F.R. § 404.1529, statements and other information by treating physicians, and statements and opinions provided by the vocational expert. Although the ALJ noted that Plaintiff had chronic pain, he determined that her pain was not disabling. Tr. 58. The ALJ considered the fact that Plaintiff took drugs for her pain and had undergone treatment to deal with the pain; however, he noted that even though Plaintiff testified she could not lift her 2 year old, she did take care of her during the day and the 5 year old from the time he came home from school until her mother came home from work. Tr. 57. The ALJ took into consideration that Plaintiff could swim and do yoga. Tr. 459, 462. The ALJ even stated that he relied on Plaintiff's treating doctor's opinion, not the earlier opinions by the state agency doctors. Tr. 58. The evidence from the treating doctor showed Plaintiff's depression was resolved with medication and she was experiencing improvements in her pain and ability to function. The Fifth Circuit has "recognized that an absence of objective factors indicating the existence of severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition – can itself justify the ALJ's conclusion." *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

"It must be remembered that '[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'" *Harrell*, 862 F.2d at 480 (quoting *Loya v. Heckler*, 707 F.2d 211, 215

(5th Cir. 1983)).  The Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints of pain was based on the proper legal standards.  Notably, he did not find that Plaintiff was completely lacking in credibility regarding pain.  Rather, while he did find objective evidence to support Plaintiff's complaints of chronic pain, he did not find that the pain she experienced was disabling.  These findings are supported by substantial evidence in the record, and do not merit remand.

## VII.  CONCLUSION

The Magistrate Court **AFFIRMS** the final decision of the Commissioner and **ENTERS JUDGMENT** in favor of the Defendant.

SIGNED this 28th day of August, 2006.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE